# IN THE SUPREME COURT OF IOWA

No. 09–1492

Filed May 20, 2011

**STATE OF IOWA,**

Appellee,

vs.

**RICHARD WARREN FANNON,**

Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Thomas L. Koehler, Judge.

On further review, defendant claims his trial counsel was ineffective for failing to object after the State allegedly breached the plea agreement during sentencing. **DECISION OF COURT OF APPEALS VACATED; SENTENCES VACATED AND CASE REMANDED FOR RESENTENCING.**

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Elisabeth S. Reynoldson, Assistant Attorney General, Harold L. Denton, County Attorney, and Gerald A. Vander Sanden and Jennifer P. Clinton, Assistant County Attorneys, for appellee.

**APPEL, Justice.**

In this case, we consider whether a criminal defendant receives ineffective assistance of counsel when the defendant's attorney fails to object after the State allegedly breaches its plea agreement with the defendant during the sentencing hearing. For the reasons expressed below, we answer in the affirmative. As a result, we vacate the defendant's sentences and remand the case for resentencing before a different judge.

## I. Factual and Procedural Background.

The State charged by trial information the defendant, Richard Fannon, with two counts of sexual abuse in the second degree against a minor child. Prior to trial, Fannon and the State reached a plea agreement. The agreement provided that, in exchange for Fannon's guilty pleas, the State would reduce both counts to sexual abuse in the third degree and make no sentencing recommendation during the sentencing hearing. The State subsequently amended the trial information in accordance with the agreement, and Fannon entered a plea of guilty on both counts.

A different prosecutor represented the State at the sentencing hearing. The following discussion took place during the hearing:

> The Court: State have a recommendation, Mr. Vander Sanden? A. Yes, your Honor. Thank you.
>
> With regard to Counts I and II, the State requests the Court sentence the Defendant to an indeterminate term not to exceed ten years on both counts and order that both those terms run consecutive to each other for a total of twenty years, along with the mandatory minimum fines that apply on both counts and the other terms and conditions of the sentence that would be typical for a Class C felony offense, court costs, attorney fees, and, of course, the requirement for lifetime parole and registry with the sex offender registry once he is released from his incarceration.

> I believe that there are compelling reasons to run the two sentences consecutive to one another.
>
> Mr. Sissel [defense counsel]: Your Honor, can we approach real quick?
>
> The Court: You may.
>
> (A discussion was held off the record at the bench between the Court and counsel.)
>
> Mr. Vander Sanden: Your Honor, if I can start again, I understand that based upon the conversation we've had up at the bench, the plea agreement was that Mr. Fannon would plead guilty to both counts of Sexual Abuse in the Third Degree, and we would leave the matter of consecutive versus concurrent up to the Court and that the defense would be free to argue for concurrent sentences.

Defense counsel did not request to withdraw Fannon's guilty pleas, nor did counsel request specific performance of the agreement before a different sentencing judge. Also, the record shows defense counsel did not consult with Fannon before electing to proceed with the hearing.

The court, citing the presentence investigation report and Fannon's criminal history, subsequently ordered that each sentence be served consecutively. Fannon appealed.

On appeal, Fannon claimed that his state and federal constitutional rights to the effective assistance of counsel were violated. Specifically, Fannon argued that his trial counsel failed to perform an essential duty by failing to object after the State breached the plea agreement during sentencing. Relying on *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), Fannon argued he was prejudiced by his counsel's failure because the breach "tainted" the sentencing hearing.

In response, the State argued there was no breach and that the prosecutor's recommendation for consecutive sentences was a "misstatement" and a "mistake." The State argued that defense counsel

provided effective assistance because counsel "was aware of the mistake, addressed it with counsel and the court, and chose to proceed with sentencing." According to the State, the prosecutor's "quick and complete acknowledgement of the error" and the decision of Fannon's counsel to proceed with sentencing satisfied the requirements of the Sixth Amendment and article I, section 10 of the Iowa Constitution. In the alternative, the State asserted that the record was inadequate for the court to consider the ineffective-assistance-of-counsel claim on direct review.

The court of appeals affirmed. The court first noted that, although ineffective-assistance-of-counsel claims are typically reserved for collateral review, the record was adequate to decide the case on direct review. Addressing the merits, the court reasoned that Fannon failed to show that the State breached the plea agreement or that Fannon suffered prejudice. The court noted that defense counsel did not fail to perform an essential duty because counsel "immediately brought the misstatement of the prosecutor to the court's attention, therefore fulfilling his duty." The court also explained that Fannon failed to establish prejudice because the sentencing court relied on the presentence investigation report, not the prosecutor's statements, in ordering consecutive sentences. Fannon applied for further review, which we granted.

## II. Discussion.

The Sixth Amendment of the United States Constitution and article I, section 10 of the Iowa Constitution guarantee to each criminal defendant not only the right to the assistance of counsel, but the effective

assistance of counsel.[1] *Simmons v. State Pub. Defender*, 791 N.W.2d 69, 75 (Iowa 2010). Ineffective-assistance-of-counsel claims are generally preserved for postconviction relief proceedings, but " 'we will consider such claims on direct appeal where the record is adequate.' " *State v. Bearse*, 748 N.W.2d 211, 214 (Iowa 2008) (quoting *State v. Horness*, 600 N.W.2d 294, 297 (Iowa 1999)); *see also* Iowa Code § 814.7(3) (2007). To prevail on a claim of ineffective assistance of counsel, the defendant must show: " '(1) counsel failed to perform an essential duty and (2) prejudice resulted.' " *State v. Allen*, 708 N.W.2d 361, 365 (Iowa 2006) (quoting *State v. Wills*, 696 N.W.2d 20, 22 (Iowa 2005)); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984).

**A. Adequacy of the Record.** A defendant requesting the court to decide an ineffective-assistance-of-counsel claim on direct appeal must establish "an adequate record to allow the appellate court to address the issue." *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010). "[I]t is for the court to determine whether the record is adequate and, if so, to resolve the claim." *Id.*; *see also* Iowa Code § 814.7. In this case, the record reflects the terms of the plea agreement, the State's conduct that is alleged to have breached the plea agreement, and defense counsel's response to the alleged breach. Further, the record shows defense counsel did not consult with Fannon before allowing the hearing to continue. Therefore, we are satisfied that the record is adequate to

---

[1]Fannon asserts his ineffective-assistance-of-counsel claim under both the Sixth Amendment of the United States Constitution and article I, section 10 of the Iowa Constitution. Fannon does not, however, argue that we should interpret the legal standards of article I, section 10 in a fashion different from those governing the parallel provisions of the Sixth Amendment of the United States Constitution. In this situation, although we reserve the right to apply the principles differently, we generally assume that the legal principles governing both provisions are the same. *See Simmons v. State Pub. Defender*, 791 N.W.2d 69, 76 n.3 (Iowa 2010).

decide this case on direct review. *See Bearse*, 748 N.W.2d at 214 (concluding that the record was adequate to decide the matter on direct review because it reflected "the written plea agreement and the circumstances giving rise to [the defendant's] claim that the prosecutor breached the plea agreement, as well as defense counsel's response"); *Horness*, 600 N.W.2d at 297–98 (holding the record was adequate to consider ineffective-assistance claim on direct review because the record provided the terms of the plea agreement). We decide the issue de novo. *Bearse*, 748 N.W.2d at 214.

**B. Failure to Perform an Essential Duty.** A defense attorney fails to perform an essential duty when his or her performance falls below the " 'normal range of competence.' " *State v. McPhillips*, 580 N.W.2d 748, 754 (Iowa 1998) (quoting *State v. Spurgeon*, 533 N.W.2d 218, 219 (Iowa 1995)). Counsel is presumed to have performed within the normal range of competence. *Horness*, 600 N.W.2d at 298. This presumption may be overcome by a showing that counsel failed to raise a valid objection. *See Bearse*, 748 N.W.2d at 215, 217. However, "[t]rial counsel is not ineffective in failing to urge an issue that has no merit." *McPhillips*, 580 N.W.2d at 754. We, therefore, first consider whether the State breached the plea agreement during the sentencing hearing. *See Bearse*, 748 N.W.2d at 215–17. If so, we must then address whether defense counsel adequately responded to the State's breach. *See id.* at 217.

"[A] guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of . . . fundamental rights . . . ." *Santobello*, 404 U.S. at 264, 92 S. Ct. at 500, 30 L. Ed. 2d at 434 (Douglas, J., concurring). Although the use of plea agreements is an "essential

component of the administration of justice,"[2] the validity of the plea-bargaining process "presuppose[s] fairness in securing agreement between an accused and a prosecutor." *Id.* at 260–61, 92 S. Ct. at 498, 30 L. Ed. 2d at 432; *see also State v. Kuchenreuther*, 218 N.W.2d 621, 624 (Iowa 1974). " '[V]iolations of either the terms or the spirit of the agreement' require reversal of the conviction or vacation of the sentence," *Horness*, 600 N.W.2d at 298 (quoting *Stubbs v. State*, 972 P.2d 843, 845 (Nev. 1998)), regardless of whether the violation is intentional or accidental, *Santobello*, 404 U.S. at 262, 92 S. Ct. at 499, 30 L. Ed. 2d at 433; *Bearse*, 748 N.W.2d at 215.

The parties agree that the sentencing prosecutor initially violated the express terms of the plea agreement by recommending consecutive sentences. The fighting issue in this case is whether the prosecution's attempt to cure its improper remarks salvaged an otherwise broken promise. The question of whether such improper remarks may be so cured is an issue of first impression in Iowa.[3]

Several courts in other jurisdictions have had occasion to address this issue. In *State v. Birge*, 638 N.W.2d 529, 531 (Neb. 2002), the defendant pled no contest to unlawful possession with intent to deliver cocaine in exchange for the State's promise to dismiss other charges and remain silent at sentencing. During the sentencing hearing, the prosecutor asked the court to consider the full range of potential

---

[2]An estimated ninety-five percent of convictions are secured through the plea-bargaining process. Michael M. O'Hear, *Plea Bargaining & Procedural Justice*, 42 Ga. L. Rev. 407, 409 & n.1 (2008).

[3]Though similar, *Bearse* does not control our analysis on this issue. The State correctly points out that *Bearse* turned on whether the State satisfied its obligation to recommend against incarceration under the plea agreement. *See Bearse*, 748 N.W.2d at 216–17. *Bearse* left unresolved whether the State may cure an alleged breach by withdrawing its improper remarks and starting anew.

punishments. *Birge*, 638 N.W.2d at 531. Defense counsel objected and explained the plea agreement to the court. *Id.* The prosecutor then stated, "I will withdraw the remarks. I do not make any recommendation as to sentencing at all." *Id.* at 532. Relying on *Santobello*, the Nebraska Supreme Court concluded:

> [O]nce the State has violated the plea agreement by failing to remain silent at sentencing, the violation cannot be cured either by the prosecutor's offer to withdraw the comments or by the trial court's statement that it will not be influenced by the prosecutor's comments in imposing sentence.

*Id.* at 535–36; *but see State v. Timbana*, 186 P.3d 635, 638–39 (Idaho 2008); *State v. Knox*, 570 N.W.2d 599, 600–01 (Wis. Ct. App. 1997).

Federal cases draw similar conclusions. Particularly, in *White v. United States*, 425 A.2d 616, 616 (D.C. 1980), the Government agreed not to oppose defense counsel's recommendation that the defendant be placed in a drug rehabilitation program in lieu of incarceration. During sentencing, however, the Government expressed its agreement with the district court's concerns that the defendant had unsuccessfully gone through many programs before. *White*, 425 A.2d at 617. These comments drew an objection, which prompted the prosecutor to withdraw his statements. *Id.* The D.C. court found the prosecutor's comments in breach of the agreement. *Id.* at 620.

The court first noted that the Government must strictly comply with the terms of plea agreements. *Id.* at 618. The court was troubled by the fact that the prosecutor's statements implied that, but for the plea agreement, the Government would oppose placing the defendant in a drug rehabilitation program. *Id.* at 619. Thus, the court concluded, "Although the prosecutor formally withdrew his statement after defense counsel objected to it, that perfunctory gesture alone could not cure the

breach." *Id.*; *see also United States v. Munoz*, 408 F.3d 222, 228 (5th Cir. 2005) (holding that the prosecutor's request to have the court follow the plea agreement after the prosecutor's breach during sentencing "amounted to little more than lip service to the plea agreement and did not rectify the breach"); *United States v. Taylor*, 77 F.3d 368, 370–71 (11th Cir. 1996) (concluding that the Government breached the plea agreement by supporting, prior to sentencing, a presentence investigation report that was incompatible with the plea agreement, even though the Government advocated for the terms of the plea agreement during the sentencing hearing); *United States v. Kurkculer*, 918 F.2d 295, 298 & n.5 (1st Cir. 1990) (stating that "[i]t is clear error to say that no breach ever occurred" when "the prosecution withdrew its first recommendation, which was contrary to the plea agreement, and told the court that it was recommending sentencing in accordance with the agreement").

We agree with these decisions and hold that the State's conduct during Fannon's sentencing hearing constitutes a breach of the plea agreement that could not be cured by the prosecutor's withdrawal of the improper remarks. The improper use of a plea agreement not only "threatens the liberty of the criminally accused," but also " 'the honor of the government' and 'public confidence in the fair administration of justice.' " *Bearse*, 748 N.W.2d at 215 (quoting *Kuchenreuther*, 218 N.W.2d at 624). We therefore hold prosecutors " 'to the most meticulous standards of both promise and performance.' " *Horness*, 600 N.W.2d at 298 (quoting *State ex rel. Brewer v. Starcher*, 465 S.E.2d 185, 192 (W. Va. 1995)). These standards demand of prosecutors strict, not substantial, compliance with the terms of plea agreements. *Bearse*, 748 N.W.2d at 215.

Here, the State violated both the spirit and express terms of the agreement. Although the sentencing prosecutor attempted to "start again" following the breach, his conduct, whether intentional or inadvertent,[4] revealed that, but for the agreement, the State would recommend consecutive sentences. The sentencing prosecutor, therefore, failed to strictly comply with the agreement, and, accordingly, his conduct fell below the most meticulous standards of both promise and performance. *See Horness*, 600 N.W.2d at 298.

Because the State breached the plea agreement, we must determine whether defense counsel adequately responded to the breach. If the State breaches a plea agreement during the sentencing hearing, a reasonably competent attorney would make an objection on the record to " 'ensure that the defendant receive[s] the benefit of the agreement.' " *Bearse*, 748 N.W.2d at 217 (quoting *Horness*, 600 N.W.2d at 300). "[N]o possible advantage could flow to the defendant from counsel's failure to point out the State's noncompliance. Defense counsel's failure in this regard simply cannot be attributed to improvident trial strategy or misguided tactics." *Horness*, 600 N.W.2d at 300 (citation omitted).

After the State breached the plea agreement, defense counsel requested a bench conference. Following the bench conference, the prosecutor withdrew his earlier remarks and explained the terms of the agreement to the court. At no point did defense counsel object on the record to the State's breach, request Fannon be given an opportunity to withdraw the guilty pleas, or request a new sentencing hearing before a

---

[4]Although the record suggests the breach in this case may have been the result of miscommunication or confusion between the prosecutor who entered into the plea agreement and the sentencing prosecutor, "inadvertence . . . will not excuse noncompliance." *Bearse*, 748 N.W.2d at 215. "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done." *Santobello*, 404 U.S. at 262, 92 S. Ct. at 499, 30 L. Ed. 2d at 433.

different judge. Counsel also failed to consult with Fannon to discuss these legal options in light of the prosecutor's breach. Therefore, defense counsel failed to perform an essential duty.[5] *See id.*

**C. Prejudice.** In order to establish prejudice, Fannon need not establish that, " 'but for his counsel's failure to object, he would have received a different sentence.' " *Bearse*, 748 N.W.2d at 217 (quoting *Horness*, 600 N.W.2d at 300). Instead, Fannon must show that "the outcome of the [sentencing] proceeding would have been different." *Horness*, 600 N.W.2d at 300–01. The State asserts Fannon suffered no prejudice because "the record is clear that the court did not consider" the prosecutor's improper recommendation.

The State raised, and we rejected, a similar argument in *Bearse*. We explained:

> [T]he ability of the sentencing court to stand above the fray and overlook the conduct of the prosecutor cannot be used by the State to minimize the prejudice component of the analysis. Our system of justice requires more and does not allow prosecutors to make sentencing recommendations with a wink and a nod. The concept of justice has a far greater meaning.

*Bearse*, 748 N.W.2d at 217–18; *see also State v. Carrillo*, 597 N.W.2d 497, 501 (Iowa 1999). We set forth the appropriate analytical framework to assess prejudice in this context in *Horness*, stating:

> A proper objection by the defendant's attorney would have alerted the sentencing court to the prosecutor's breach of the plea agreement. In that circumstance, the court would have allowed the defendant to withdraw his guilty pleas, or would have scheduled a new sentencing hearing at which time the prosecutor could make the promised recommendations. The outcome of the defendant's sentencing proceeding was

---

[5]After the conference at the bench, the record shows that Fannon was sentenced without an opportunity to consult with counsel. We, therefore, have no occasion to consider whether the district court could have validly sentenced Fannon had Fannon made an on-the-record, knowing and voluntary waiver of his right to withdraw his guilty pleas or be sentenced by a different judge during a new sentencing hearing.

> different, however, because defense counsel did not make the necessary objection. Consequently, the defendant was sentenced by the court at a hearing tainted by the prosecutor's improper comments.

*Horness*, 600 N.W.2d at 301 (citations omitted); *accord Bearse*, 748 N.W.2d at 217; *see also State v. Bergmann*, 600 N.W.2d 311, 314 (Iowa 1999) ("When trial counsel fails to object to the prosecutor's breach of the plea agreement and thereby prevents the defendant from receiving the benefit of the plea agreement, the defendant is prejudiced.").

As in *Horness*, defense counsel's failure to object to the State's breach prevented Fannon from having an opportunity to either demand specific performance of the agreement before a new sentencing judge or withdraw the guilty pleas. We have no reason to doubt the ability of the sentencing court to disregard improper remarks made by prosecutors during sentencing. Nevertheless, "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by" ensuring defendants who plead guilty in reliance on promises made by the State receive the benefit of the bargain. *See Santobello*, 404 U.S. at 262–63, 92 S. Ct. at 499, 30 L. Ed. 2d at 433. Therefore, counsel's failure to object to the State's breach caused prejudice by depriving Fannon of the benefit of the bargain, namely, that the State would make no sentencing recommendation during the sentencing hearing.

**D. Remedy.** An appropriate remedy for a breached plea agreement is one that "ensure[s] the interests of justice are served." *Bearse*, 748 N.W.2d at 218. Generally, a breached plea agreement may be remedied by allowing the defendant to withdraw the guilty plea or by remanding for resentencing before a new judge. *Id.*; *State v. King*, 576 N.W.2d 369, 371 (Iowa 1998); *see generally* George L. Blum, *Choice of*

*Remedies Where State Prosecutor Has Breached Plea Bargain*, 9 A.L.R.6th 541 (2005) (discussing remedies when prosecutors breach plea agreements). Fannon does not request a specific remedy; he merely requests us to grant him an opportunity to withdraw his guilty pleas or vacate his sentences and remand for resentencing before a new sentencing judge.

The interests of justice are best served in this case by vacating Fannon's sentences and remanding for resentencing. Doing so ensures Fannon receives the benefit of the bargain by demanding specific performance of the plea agreement. *See Bearse*, 748 N.W.2d at 218. "[T]here is no need to expend the added prosecutorial and judicial resources that would be required by vacating the conviction and allowing the process to start anew." *Id.* Therefore, we affirm Fannon's convictions for sexual abuse in the third degree, vacate his sentences, and remand the matter for resentencing before a new judge.

### III. Conclusion.

For these reasons, we vacate the decision of the court of appeals, vacate the defendant's sentences, and remand the matter to the district court for resentencing.

**DECISION OF COURT OF APPEALS VACATED; SENTENCES VACATED AND CASE REMANDED FOR RESENTENCING.**

All justices concur except Mansfield, J., who takes no part.